Entered on Docket
October 02, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: October 02, 2007

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                      Case No. 07-40472 EDJ

JAMES SCOTT RAINS                          Chapter 13
and JULIE RAINS,

                     Debtors./

### DECISION

eCast Settlement Corporation, as agent for Bank of America/FIA Card Services ("eCast"), filed an objection to confirmation of the chapter 13 plan filed by James Scott and Julie Rains, the above debtors (the "debtors"). The court will sustain the objection, in part, and overrule the objection, in part.

On February 16, 2007, the debtors filed a chapter 13 petition herein.[1] On April 9, 2007, the debtors filed an amended chapter 13

---

[1] This case is therefore governed by the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer (continued...)

DECISION

plan that proposed to pay the trustee $300 per month for two months and $700 per month for 58 months. Under the plan, the debtors' general unsecured creditors would receive an estimated 26% dividend.

eCast's objection alleges that the debtors' proposed chapter 13 plan does not dedicate all of their "projected disposable income" to the plan in accordance with Bankruptcy Code § 1325(b)(1)(B).[2] This is so, argues eCast, because certain expenses set forth in the debtors' Schedule J are not "reasonably necessary to be expended. . . for the maintenance or support of the debtor" within the meaning of § 1325(b)(2).[3] The expenses at issue are $222 per month for a

---

[1](...continued)
Protection Act of 2005 ("BAPCPA"), which applies to bankruptcy cases filed on or after October 17, 2005. All section references herein are to the Bankruptcy Code, 11 U.S.C. § 101 et. seq., as amended by BAPCPA.

[2]Section 1325(b)(1) provides:
(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan -
    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
    (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

[3]Section 1325(b)(2) provides, in relevant part:
(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than
(continued...)

DECISION 2

boat loan and $150 per month for a recreational motorcycle.  eCast also alleges that any plan, to be confirmed, must have a built-in increase in the payments at month 21 of the plan when the debtors expect to pay off their loan secured by a 2001 Chevrolet Tahoe.

The debtors do not argue that the expenses at issue are, in fact, reasonably necessary for their maintenance and support. Rather, they argue that their actual income and expenses, as scheduled, are irrelevant to the calculation of their "projected disposable income," because their current monthly income is above the California median income, and because § 1325(b)(2) and (3) mandate under such circumstances that the court determine their income and expenses in accordance with the "means test" designated in § 707(b)(2).  The difference is that, according to some courts, § 707(b)(2) may allow a debtor to include as expenses certain amounts that, as a fixed allowance, are greater than the debtor's actual expenses that are reasonably necessary for the debtor's maintenance and support.  See, e.g., In re Grunert, 353 B.R. 591, 594 (Bankr. E.D. Wis. 2006).

---

[3](...continued)
child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended -
    (A)(i) for the maintenance or support of the debtor or a
    dependent of the debtor, or for a domestic support
obligation, that first becomes payable after the date the petition is filed;

DECISION     3

The court rejects the debtors' interpretation. Many courts have opined that even when the debtor's income is above the State median, Subsections (2) and (3) of § 1325(b) were not intended to allow debtors to include as expenses amounts they are not actually expending (or expected to expend in the future) merely because such non-existent expenses may arguably be allowed as deductions for purposes of the means test. See, e.g., In re Slusher, 359 B.R. 290 (Bankr. Nev. 2007); In re Rezentes, 368 B.R. 55 (Bankr. Haw. 2007).[4] The same rationale should apply to actual expenses, such as those at issue here, that are not reasonably necessary for a debtor's maintenance and support.

Such courts, with which this court concurs, have reasoned that § 707(b)(2)(A)(ii)(I) (via § 1325(b)(3)) refers to the "applicable" amounts to be deducted as expenses, and that expenses that are not the debtor's actual expenses that are reasonable and necessary (whether current or anticipated) are not "applicable" and thus are not deductible for purposes of the calculation of the debtor's "projected disposable income." See Slusher, 359 B.R. at 309; Rezentes, 368 B.R. at 61.

Similarly, some courts have opined that "projected disposable income" in § 1325(b)(1)(B), the amount the debtor must commit to the plan, has a different meaning than "disposable income" in § 1325(b)(2). Thus, according to these courts, the means test,

---

[4] For cases holding to the contrary, see Rezentes, 368 B.R. at 59-60 n. 3.

DECISION 4

which applies, if at all, only to the calculation of "disposable income" per § 1325(b)(2) and (3), is only a starting point for calculating the debtor's "projected disposable income." See Slusher, 359 B.R. at 296-98.

The court holds that, for purposes of this case, the calculation of the debtors' projected disposable income is governed by the information the debtors provided in their Schedules I (Income) and J (Expenses), and that the debtors are not entitled to a fixed allowance of any expense that is in excess of their actual expenses that are reasonably necessary for their maintenance and support, even if such a fixed allowance might be included in the "means test" under § 707(b).

Apart from the above, the court believes it premature to require the debtors' plan to provide for an increase in their plan payment when the Chevrolet Tahoe is paid off. At present, what the debtors' then income and expenses, actual and anticipated, might be are not known. Bankruptcy Code § 1329(a)(1) provides:

> At any time after confirmation of the plan, but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed secured claim, to - (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan . . .

Therefore, if eCast wishes to request a modification of the debtors' plan upon payoff of the Chevrolet Tahoe, based on the debtors' income and expenses at that time, it may do so.

However, for the reasons stated above, the court will issue its order sustaining Ecast's objection to confirmation of the debtors' proposed amended chapter 13 plan.

\*\*END OF ORDER\*\*

COURT SERVICE LIST

All Recipients